Good morning. Michael McDaniel for UPS Supply Chain Solutions. Mr. McDaniel. If you'll please the court. In 30 years of representing air freight forwarders, there is a recurring professional frustration in receiving a lawsuit that claims damages caused by an airline, only to realize that that airline has become immunized before we even knew the litigation existed. During the oral argument of this case, Judge Fisher asked Qantas what UPS Supply Chain Solutions was to do. Were we to file a lawsuit on every shipment, just in case there might be a claim following? Well, in actuality, under the current interpretation of the Montreal Convention, there is no answer to that question, even though it costs our industry millions of dollars a year. I think that injustice is further magnified by the fact that the majority of air freight forwarders are small business non-asset operations. These small operations are called to task for damage they did not commit in cargo that they never actually saw. Now, we stress the fact that the Warsaw Convention was originally enacted in 1929, and because the air freight forwarding industry did not come into being until after World War II, no one could reasonably have foreseen the issue and the problem that we're addressing here today. But as was pointed out ñ Let me ñ I'm sorry to interrupt you, but let me just focus you on one thing that's really troubling me. Now, the Supreme Court has told us to interpret treaties as if they were contracts, and so as opposed to statutes where there's a dispute about legislative history, with treaties we are supposed to look at the intent of the contracting parties. Now, after the Warsaw Convention, whenever it was originally agreed to or ratified, there was a whole series of court cases, and without exception the United States cases cannot, being the only outlier, interpret it as covering third party, that Article 29 as limiting the third party indemnity cases. And then there's the ñ your opposing counsel points to language that the Montreal Convention intended to adopt those interpretations. So given that this is a treaty we're interpreting and we're looking at the intent of the Montreal Convention, how do I deal with all this unbroken line of precedence with the one exception that we cannot? Well, I think it's very simple, Your Honor. The Montreal Convention superseded the Warsaw Convention, and as the 11th Circuit held just last month in the Eli Lilly case, if a provision is new, it should be treated as such. It should be interpreted in its own light. And that's what we are asking to be done here, because the Warsaw Convention did not contain Article 37, nor did it contain Chapter 5. But it did have Article 29, which was ñ which is the same as Article 35, and the precedence construed them as being applicable to the third party claims, and it's not inconsistent. I completely agree. And what we argue is not inconsistent with Article 35. What we point to is another article also contained in Chapter 3, along with Article 35, which is 37, which states, Nothing in this Convention shall prejudice the question of whether a person liable for damage ñ that would be UPS supply chain ñ in accordance with its provisions has a right of recourse against any other person, and that would be Qantas. And that occurs right after Article 35. So Article 35 says ñ So there are two rights involved here. There's the right to damages under 35 and the right to recourse under 37. That's correct. And by preserving the right of recourse, the matter ñ the issue is implemented by Article 45 in Chapter 5. And I think this is where an important point has been missed when this case was ñ this issue was previously reviewed. Article 35 says commence the action within two years. Fine. That is completely consistent with Article 46 or 45. 45 says the plaintiff has an option of suing the contracting carrier or the actual performing carrier or both. Plaintiff meets that burden by filing within the two years. If the plaintiff decides to only sue one of the carriers, then I, as that carrier under 46, have the right to join the other carrier. It's like a right of first refusal. Article 45 says the carrier, my client, shall have the right to require the other carrier to join the proceeding. We're not talking about commencing a new proceeding. We're talking about the Article 45 proceeding that's already been commenced by the plaintiff, we've satisfied that article, and now we're going to exercise our right to merely join in what plaintiff has done. I find it all very harmonious. Do you wish to reserve your time, counsel? Yes. Thank you, sir. We'll hear from the airline. Good morning, Your Honors. Scott Cunningham with Condon and Forsyth in Los Angeles. On behalf of the appellee and third-party defendant, Qantas Airways Limited. Your Honors, first of all, I'd like to point out. Can you speak up? I'm having trouble hearing you. I'm sorry, Your Honor. First of all, I'd like to just address three issues of fact that Mr. McDaniel has raised. One, there's no evidence in this case that the subject cargo, which was an aircraft engine, was damaged while it was in the possession of Qantas Airways. Secondly, Mr. McDaniel. Is that issue in front of us? It is not. I just wanted to address it for the record because the implication was that it was damaged while it was in our care and there's no evidence that it was. That's an issue that would be decided in a trial or other proceedings if the indemnity claim could proceed. So I don't think we really need to address that. That's correct, Your Honor. I agree with you. The second issue of fact was there's been no explanation why the freight forwarder here waited for ten months before joining Qantas. And I know they make an equitable argument, but it was almost a year before Qantas was joined in the original action brought against the freight forwarder by the shipper. I mean, does that matter if it was even a day after the two-year period? Isn't your position that that claim was extinguished? It doesn't matter if it was a day after. It wouldn't be extinguished under Article 35. The third issue is these are commercial entities. They've been doing business for the last 70 years. They're sophisticated. They understand the convention. They understand the shipping industry. And they all insure themselves against such losses. Could you respond to that? I'll defer to listen to Judge Aikuda's question. Then I have one after that. You can proceed. Go ahead. My question is, could you shed some practical light on this? Under your client's interpretation of Article 35, could a party who is sued for damage to a shipment, could they be precluded from making any claim for indemnity or contribution in a case where they were actually served with the complaint more than two years after the injury? Your Honor, under Article 35 of the Montreal Convention, all claims, however founded, are barred if not filed within that two-year limitations period. Well, then why do you have Article 37? Article 37 falls outside of Chapter 5, but Article 37 preserves the right of recourse against third parties. For example, the convention doesn't necessarily apply only to cargo. More importantly, it applies to passenger services, passenger air carriage. So in the event of a mass air disaster, the right of recourse is preserved against, for example, a manufacturer of the aircraft or a component part manufacturer. What the drafters wanted to insure is that you could still have a third-party claim. Well, isn't that what we have here? Yes, it's a third-party claim that was not brought within the two-year limits prescribed by Article 35. So is there a difference between a right to damages, say conceptualized as a first-party claim, the damaged party sues one of the carriers, and a right to recourse, which would be the third-party indemnity claim? Does the convention create two separate rights? And if so, how does Article 35 apply to the right to recourse? It does not have separate rights for damages or for indemnification. Under California law, a party can bring a claim for indemnification before it's paid out on what's called damages. So the right that the third party, the carrier suing the contracting carrier, that would be, you would say that that was also a right for damages. Is that your position? That would be correct, Your Honor. Counsel, Judge Gould, if I could prod you with another question. I'm really having trouble understanding the rationality of interpreting Article 35 to preclude a claim in a setting where the claimant may not even have had notice about the possible claim before it's extinguished. So you could have a suit brought by the damaged party against one carrier on the day before, or even the month before the two years was up. Now, the party that sued, even assuming they're served before the two-year time period, has to evaluate it before they make a third-party claim, and that can't always be done in a day. But here, as I understand it, the service, the complaint could be filed within the two-year period, but it might not be served until after the two-year period. So the claim for contribution is extinguished before the party who sued even has a right to consider it. How could that make sense? You're right, Your Honor, and that's the situation under the Montreal Convention, Article 35, which was similar to Article 29 of the Warsaw Convention. What the drafters of both the Warsaw Convention and the Montreal Convention were concerned with was uniformity. There's currently 97 states' parties to the Montreal Convention. And states, I mean countries. And each country may have a different statute of limitations that applies to contribution and indemnity claims. What the drafters wanted to ensure is there was uniformity in the industry, because it's an industry that crosses the globe, that if the claims are to be extinguished, it will be within two years. But I don't think you're really responding to Judge Gould's question. The problem is that the person who ultimately has a third-party claim may not even know it until the last few days of the two-year period, or even after, particularly if the original freight damage claim isn't brought within two years. And that's the situation, and the drafters had a primary purpose of uniformity over individuality. Of writing off their third-party rights? Then why do you have Article 37? Article 37 preserves a third-party right as long as it's brought within the two-year statute. So the Warsaw Convention, the result that Judge Gould was saying didn't seem fair, is actually the result that occurred under the Warsaw Convention as interpreted in the United States. Is that correct? That's correct. So that a third party could have their claim extinguished before they even knew about it, essentially. And how did the courts, considering that, which does seem instinctively unfair, how did they legitimize that? What was their rationale for doing that? One of the cases that interpreted Article 29 of the Warsaw Convention, which ultimately became Article 35, was in the Northern District of California, MSX Motorola Cargo. And it was determined that based on the drafters' goal of uniformity, they needed a method to cut off claims. And they looked at the drafting minutes of the Warsaw Convention and determined that that was the overriding principle, and they wanted to enforce that principle. And that was drafted 70 years ago. Now, the Montreal Convention was drafted in 1999, implemented in the United States in 2003. There were 118 delegates that went to the Montreal Convention and 11 international organizations. Nobody raised this issue of an inequity or offered to change it. That's why it's remained the same, because it's worked for the past 70 years. And do other nations who are parties to the treaty interpret it that way? Do they carry over the Warsaw Convention rule to the Montreal Convention? I haven't seen any cases from any other countries with respect to that. To this issue? Okay, thank you. Counsel, why should we assume that the drafters of the convention, you know, wanted uniformity at the cost of having a uniform tendency to create injustice? If someone doesn't get an ability to make an assessment of a third-party claim. I know that, you know, under Rule 14, you can bring someone in before your claim accrues, perhaps. But you can't bring them in before you know there's a claim against you. I understand the concern here. And when you talk about uniformity, looking at the drafting minutes for the Montreal Convention, when they looked at Article 35, they stated, bearing in mind the practice and the fact that the provision in its present form had indeed stood the test of time without any recognized difficulties arising. And in the context of the explanation given by the chairman, the conference accepted Article 35 in the form presented. The minutes are attached to the appellee's brief as an addendum. And that appears on page 2. Thank you, Counsel. Your time has expired. Mr. McDaniel, you have some reserve time. Thank you. I would urge you to review the preamble to the Montreal Convention. It does not state the goal is creating uniformity. It states that uniformity is a means, a means to the goal, and the goal is identified as achieving an equitable balance of interests. And that's what we're asking to be done today. Well, help us out with the interplay between 35 and 37. Well, with the interplay between 35, 37, and 45. Well, I'm focusing on 35 and 37 because it appears to me that you may be right, that there are two separate causes of action here, the right to damages under 35 or the third-party right under 37, which did not exist under Rule 29. That's Article 29. Excuse me, Article 29. I completely agree. I believe that that is the enabling legislation, if you will, and in Chapter 5, which contains Article 45, is the cookbook. A case that was recently cited to the court in the briefs was the Allianz case, in which Judge Patel, in her decision, clearly saw the problems that we're dealing with in this case. She realized it was an injustice, and in the closing paragraph of her decision, she mentions this very case and asks if this panel is going to rely on the new provisions of Montreal. 37 has never been reviewed by a court in this context before, and reverse. And that is what we ask the court to do. Why don't you answer Judge Gould's question to Mr. Cunningham about the example of where the third-party claimant may not even know within two years that he has a claim. That's exactly what happened in this case.  Okay, but what is in the treaty? What is the language that you can rely on to deal with that issue? Under the old Warsaw or the new Montreal? Aren't we here under the new Montreal? Yes. All right. All right. Well, I rely on 35. On 35, not 37. I'm sorry. I rely on 37. All right. Okay. Does that answer your question? Yes, thank you. And so under the Warsaw Convention, I take it that this is the regime, the regime that the district court applied is the same as what was being done under the Warsaw Convention for that unbroken string of cases. Now, why should we think that Montreal Convention intended to change those, that result, however unfair it may be, given that they didn't expressly address it and they say we want to retain the same interpretation? Well, I don't think they, I think we can, as I said, we can retain the same interpretation of 35, but we just have to look to the additional features that have been added. 29, 37, and then the entire Chapter 5. Those didn't exist before. Okay, but the interpretation of 29 was that it extinguished, that the two years extinguished the third-party claims, so I don't quite understand that. Because there's nothing that says in the two years doesn't apply to the third-party claims. Well, but 37 says nothing in this Convention shall prejudice the question. Right, but it doesn't say anything about the time, right? Well, but it's directly below 35, which includes the time. And so when 37, when 37 specifically says nothing in the Convention shall prejudice the question, I would just ask you to consider this issue. If it's not referencing the prejudice of the time bar, what else is there? Well, there's, it's a state right, right? In other words, the Montreal Convention doesn't create a right of indemnity, and 45 doesn't say that. It says you can join someone, and then if you have a right under state law, so this preserves that right under state law, presumably. That's what opposing counsel argues. I don't doubt that that may be true, but that's not the center of our argument. The center of our argument is that 35 requires filing within two years. 45 merely shows how the right is exercised for joining someone in the action that's already been filed within the two years. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Gould, Ikuta